OPINION
Following a jury trial Dreston Walker was found guilty of numerous charges and firearm specifications. The trial court sentenced Walker to one hundred two years in prison. From his convictions and sentences Walker has timely appealed.
Dreston Walker is Jeronda Johnson's former boyfriend. They had two children together. On April 23, 1998, Johnson received both pages and voice mail messages from Walker. The number displayed on Johnson's pager, "187," was the police code for murder. Later that day when Johnson picked up her children at her mother's house, she encountered Walker. Johnson reluctantly agreed to Walker's request to give him a ride back to his apartment.
Upon arriving at his apartment Walker asked Johnson to come inside because he had some money to give her for the children. Once inside that apartment, however, Walker threw Johnson down on the floor and began punching her in the face and head. Walker eventually ran out the back door and Johnson escaped out the front door. Johnson was taken to Good Samaritan Hospital where she was admitted for her injuries.
As a result of this assault upon Jeronda Johnson, Dreston Walker was charged with one count of Domestic Violence, R.C.2919.25(A), and one count of Felonious Assault, R.C.2903.11(A)(1).
On April 25, 1998, at around 1:30 p.m., Dayton police officers Sitesa Van Nuys and Stephen Bice went to Walker's apartment at 2245 Emerson Avenue, Dayton, to execute a warrant for Walker's arrest for the assault upon Jeronda Johnson. When the officers first arrived Walker was sitting outside on the front porch, but he quickly went inside and refused to answer the door when the officers knocked and announced their purpose. When Officer Bice walked around the back of the building looking for Walker, he observed him loading a shotgun. Officer Bice drew his weapon and ordered Walker to put the gun down. Walker responded by pointing the shotgun at Officer Bice. After Officer Bice alerted his partner, Officer Van Nuys, that Walker had a gun, both officers ran across the street where they could take cover. Meanwhile, Walker fired several rounds at the officers, striking Officer Van Nuys in the hip and buttocks. Walker then quickly disappeared.
As a result of this conduct, Walker was charged with two counts of Felonious Assault Upon a Police Officer (Counts Three and Four) in violation of R.C. 2903.11(A)(2). A three year firearm specification was attached to each count. R.C. 2941.145.
Just moments after Walker shot at the police officers, Robert Larsen left Ray's Pharmacy, located on Catalpa Drive in Dayton. As Larsen was driving down the alley behind the pharmacy at a point where that alley intersects with Rugby Road, Walker approached Larsen. Walker pointed his shotgun at Larsen and demanded Larsen's vehicle. Larsen quickly turned onto Rugby Road and sped away, but as he did so Walker shot Larsen in the back. Larsen made it back to Ray's Pharmacy where an ambulance was summoned.
As a result of these actions Walker was charged with Felonious Assault (Count Five), R.C. 2903.11(A)(2), and Aggravated Robbery (Count Six), R.C. 2911.01(A)(1). A three year firearm specification was attached to each of these counts. R.C.2941.145.
A few minutes after the incident involving Robert Larsen, Velma McCall and her grandson also left Ray's Pharmacy traveling the same route Larsen had taken. At that same location where the alley intersects with Rugby Road, Walker confronted McCall. Walker pointed his shotgun at McCall and demanded her vehicle. McCall and her grandson got out of the car and ran back to Ray's Pharmacy.
This conduct resulted in Walker being charged with Aggravated Robbery (Count Seven) in violation of R.C. 2911.01(A)(1). Once again a three year firearm specification was attached to the charge. R.C. 2941.145.
At around 1:45 p.m., Jeronda Johnson was at her sister's house at 2137 Kipling Drive, Dayton, when she looked outside and saw Walker approaching the house with a shotgun. Walker attempted to kick open the front door but Juanita Boyd, Jeronda Johnson's mother, leaned her body against that door to keep Walker from coming inside. Walker then proceeded out into the front yard where he fired four shots through the living room window. At that point Walker returned to the stolen vehicle which he had parked in front of the residence. Walker reloaded his shotgun as he walked back to his car. Walker then fired one shot over the roof of that vehicle at the residence, before getting back inside the vehicle and firing one final shot at the residence through the open passenger window of that vehicle. Walker then fled.
These events resulted in Walker being charged with Felonious Assault (Count Eight), R.C. 2903.11(A)(2), Attempted Aggravated Burglary (Count Nine), R.C. 2923.02(A), R.C.2911.11(A)(2), and Improperly Discharging a Firearm At or Into a Habitation (Counts Ten and Eleven), R.C. 2923.161(A). A three year firearm specification was attached to each of these offenses. R.C.2941.145. In addition, a separate five year firearm specification, R.C. 2941.146, was attached to Count Eleven.
At approximately 2:10 p.m., Walker was spotted by police proceeding southbound on I-75 toward Cincinnati in McCall's stolen vehicle. A chase ensued with Walker refusing to pull over and stop despite being pursued by marked police cruisers from several jurisdictions. Walker eventually exited I-75 into downtown Cincinnati and proceeded to run red lights as he fled from police at speeds of ninety miles per hour. At the intersection of Central Parkway and Sycamore Street, Walker ran a red light and collided with a vehicle driven by Thomas Sibilsky. At that point Walker was apprehended. The accident, however, caused serious injuries to Sibilsky.
As a result of these events Walker was charged with Failure to Comply with the Signal of a Police Officer (Count Twelve), R.C.2921.331(B), Having Weapons While Being a Fugitive from Justice (Count Thirteen), R.C. 2923.13(A)(1), Felonious Assault (Count Fourteen), R.C. 2903.11(A)(2), and Aggravated Vehicular Assault (Count Fifteen), R.C. 2903.08(A).
Prior to trial Walker filed a motion to suppress statements he made to the police. The trial court overruled that motion following a hearing. Walker also filed motions to dismiss the second firearm specification to Count Eleven, as well as Counts Twelve through Fifteen. Additionally, Walker filed pretrial motions seeking dismissal or severance of several counts: One and Two, Five and Six, Six and Seven, Ten and Eleven, Fourteen and Fifteen. These motions were overruled.
Following a jury trial Walker was found guilty on all counts and firearm specifications except Counts Eight and Fourteen. Prior to sentencing Walker filed motions seeking merger of several of the counts and firearm specifications. Prior to sentencing Walker, the trial court refused to merge any of the charges but did merge the separate firearm specifications attached to Counts Five and Six, as well as the three year specifications attached to Counts Nine, Ten, and Eleven. The trial court then imposed consecutive sentences on the offenses which in the aggregate total seventy-eight years, plus an additional and consecutive twenty-four years on the firearm specifications, for a total of one hundred two years in prison.
Walker has timely appealed from his convictions and sentences, presenting twelve assignments of error for our review. We shall consolidate those claims of error where appropriate.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS.
Prior to trial Walker filed a motion to suppress the statements he made to police. Following an evidentiary hearing, the trial court overruled Walker's motion to suppress. Walker now claims that the trial court committed error in not granting his motion to suppress because his waiver of his Miranda rights and his subsequent statements he made to police were rendered involuntary by the coercive nature of the length of time he was held in police custody before being questioned. We disagree.
In determining whether a confession has been involuntarily induced, courts must examine the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Edwards (1976),49 Ohio St.2d 31; State v. Dean (September 29, 1995), MontgomeryApp. No. 14721, unreported. The ultimate question is whether theconduct of law enforcement officials was such as to overbear theaccused's will to resist and bring about a confession not freelyself-determined. Edwards, supra.
The evidence demonstrates that Dreston Walker fled from Dayton police and was pursued all the way into downtown Cincinnati where he continued to flee at a high rate of speed until he ran a red light and caused a serious traffic accident at approximately 2:50 p.m. Walker was immediately arrested and advised of hisMiranda rights at the scene by Cincinnati police officer Frank McGraw. Walker stated that he understood his rights. Walker was not interrogated at that time, however, other than being asked his name and social security number. Walker was treated at the accident scene by emergency medical technicians and released. He was then transported to the police station and placed in a room in the criminal investigation section. At approximately 6:45 p.m. Walker was transferred to the jail.
At around 8:10 p.m., Det. Gary Dunsky from the Dayton Police Department arrived in Cincinnati and began his interview of Walker. Det. Dunsky advised Walker of his Miranda rights via a pre-interview form. Walker acknowledged by his initials that he understood each and every one of his rights. Walker also agreed to waive his rights and speak with police, and he signed the rights waiver portion of the form. Immediately thereafter Walker gave an oral statement. Between 8:42 p.m. and 8:59 p.m., Walker gave a videotaped statement. By 9:00 p.m., Det. Dunsky had completed his interview of Walker.
The police interview of Dreston Walker lasted less than one hour. Prior to making a statement Walker was advised of his rights, acknowledged that he understood his rights, and agreed to waive his rights. At no time did Walker request the assistance of counsel. Walker was twenty-eight years old and had completed twelve years of school. During the interview Walker answered questions appropriately and appeared to have good recall of the events which occurred that day, as well as two days earlier. Walker did not have bloodshot eyes, he did not slur his speech, and gave no indication he was under the influence of alcohol or drugs.
On these facts the length of time that Walker was in the custody of Cincinnati police before being interviewed by Dayton police, a little over five hours, is not evidence of police coercion. State v. Brewer (1990), 48 Ohio St.3d 50, 58; Dean,supra. There is no evidence in this record of any police coercion of any kind. No one attempted to interview Walker during this time frame, and there were no threats, physical deprivation or mistreatment by police. Walker was allowed to use the restroom and was offered food and drink.
On the totality of these facts and circumstances, Walker's will to resist confessing was not overborne by coercive police conduct. Walker's waiver of his Miranda rights and his subsequent statements to police were voluntary.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT SEVERING COUNTS 1 2.
 NINTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING MOTION FOR RELIEF FROM PREJUDICIAL JOINDER.
In these related assignments of error Walker argues that the trial court abused its discretion in failing to sever Counts One and Two for trial. According to Walker, the events at issue in these counts occurred two days before the events which make up the remaining counts, and involved a different victim and a different locale. Walker claims that these counts had no connection to the remaining charges, and their joinder prejudiced him by portraying him as an evil, bad person. Walker further argues that the trial court abused its discretion in refusing to grant relief from the joinder of all of the remaining charges. Walker asserts that the evidence introduced as to each of these counts had a "spillover," cumulating effect on the other counts. Crim.R. 8(A) governs joinder of offenses and provides:
 (A) Joinder of offenses. Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
Generally, joinder of offenses is favored in order to prevent successive trials and minimize the possibility of incongruous results in successive trials, conserve judicial resources, and diminish inconvenience to witnesses. State v.Torres (1981), 66 Ohio St.2d 340; State v. Schaim (1992),65 Ohio St.3d 51.
In this case joinder of all of the offenses was proper via Crim.R. 8(A) because all of the offenses are intertwined and part of a course of criminal conduct. The offenses charged in counts one and two, which allege that Walker committed acts of domestic violence and felonious assault upon his former girlfriend, Jeronda Johnson, are the starting point of Walker's crime spree. Because of those two offenses, a warrant was issued for Walker's arrest. When police officers went to Walker's apartment to execute that warrant, Walker shot at them, striking one of the officers. This gives rise to counts three and four, felonious assault on a peace officer.
Walker immediately fled and moments later he attempted to steal Robert Larsen's car at gunpoint. Walker was unsuccessful in acquiring Larsen's vehicle but he did shoot Larsen during the attempt. This provides the basis for counts five and six, felonious assault and aggravated robbery. Walker immediately encountered another vehicle, this one driven by Velma McCall. This time Walker was successful in stealing that car at gunpoint. This gives rise to count seven, aggravated robbery.
After stealing McCall's vehicle, Walker drove to a residence where Jeronda Johnson was located. After unsuccessfully attempting to force his way inside that residence, Walker fired several shots from the front yard into that home through the living room window. Walker then returned to the stolen vehicle and fired another shot into the home over the top of that vehicle. Finally, Walker got back inside the vehicle, fired another shot into the home through the open passenger window of that car, and fled. These actions provide the basis for counts eight through eleven, felonious assault, attempted aggravated burglary, and two counts of improperly discharging a firearm into a habitation.
Shortly thereafter police spotted Walker in the stolen vehicle proceeding south on I-75 and the chase began. Police from several jurisdictions in marked cruisers pursued Walker in a high speed chase down I-75 to Cincinnati. Walker exited I-75 into downtown Cincinnati and the high speed chase continued until Walker ran a red light and collided with a vehicle driven by Thomas Sibilsky. This is the basis for counts twelve through fifteen, failure to comply with a signal of a police officer, having weapons while under disability, felonious assault, and aggravated vehicular assault.
Even if offenses are properly joined for trial, an accused can still obtain a severance of those charges provided the accused can demonstrate prejudice resulting from the joinder. Crim.R. 14;State v. Franklin (1991), 62 Ohio St.3d 118. In reviewing a trialcourt's refusal to separate charges for trial, appellate courtsemploy an "abuse of discretion" standard. Schaim, supra. Anabuse of discretion connotes more than a mere error of law or anerror in judgment. It implies an arbitrary, unreasonable,unconscionable attitude on the part of the trial court. State v.Adams (1980), 62 Ohio St.2d 151.
First we note that an accused is not prejudiced by a joinder of offenses if the State could have introduced evidence of one offense in the trial of another severed offense. Franklin, supra. To that extent, we note that the offenses here are so blended and intertwined that proof of one explains the circumstances of the next, and provides the setting for it. State v. Wilkinson (1980),64 Ohio St.2d 308. Moreover, joinder of offenses does notprejudice an accused where the evidence of each offense is simpleand direct. Torres, supra; Franklin, supra.
In this case the evidence pertaining to each offense was simple and direct, and created a succession of distinct, separate acts. In such cases the jury is capable of segregating the proof for each offense, and not cumulating the evidence of the varying offenses being tried. State v. Roberts (1980), 62 Ohio St.2d 170;State v. Brooks (1989), 44 Ohio St.3d 185. Walker, on the otherhand, has not demonstrated how his rights were prejudiced by ajoinder of these offenses for trial. Notions that absent joinderWalker might have had better options available for defensestrategies, or the possibility that he might have desired totestify with respect to some counts but not others, are tooinsubstantial and speculative to demonstrate prejudice. Torres,supra.
On the record before us we cannot conclude that the trial court "abused its discretion" in refusing to separate these offenses for trial.
The second and ninth assignments of error are overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO DISMISS THE INDICTMENT AS TO COUNTS 1, 2, 5, 6, 14 AND 15 FOR UNCONSTITUTIONALITY.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT GRANTING THE MOTION TO DISMISS FOR MULTIPLICITY.
 FIFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO DISMISS GUN SPECIFICATION IN COUNT 11.
 TENTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT MERGING ALL OF THE COUNTS.
 TWELFTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT GRANTING THE MOTION TO MERGE THE VARIOUS COUNTS AND GUN SPECIFICATIONS.
In these related assignments of error Walker asserts that the trial court's failure to merge various counts and specifications violated his rights under the Double Jeopardy Clause of both the United States and Ohio Constitutions by subjecting him to multiple punishments for the same offense.
The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that no person shall be twice put in jeopardy for the same offense. Among the various rights which the Double Jeopardy Clause protects is the right not to be subjected to multiple punishments for the same offense. Brown v. Ohio (1977), 431 U.S. 161. Where the same actor transaction constitutes a violation of two distinct statutoryprovisions, the test to be applied to determine whether there aretwo offenses or only one for double jeopardy purposes is whethereach offense requires proof of a fact which the other does not.Blockburger v. United States (1932), 284 U.S. 299.
Although the violation of two separate statutory provisions may constitute just one offense for double jeopardy purposes under the Blockburger test, nevertheless, if the General Assembly has clearly manifested its intent to permit cumulative punishments, that expressed intent is dispositive and application of theBlockburger test in those instances is improper. Ohio v. Johnson(1984), 467 U.S. 493; State v. Rance (1999), 85 Ohio St.3d 632.In Ohio the General Assembly has clearly expressed its intentionto permit cumulative punishments in certain situations where asingle act violates two or more separate statutory provisions byenacting the multiple counts statute, R.C.2941.25. Id.
R.C. 2941.25 provides:
2941.25 MULTIPLE COUNTS
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Ohio's multiple counts statute is a sentencing remedy which prohibits convicting an accused of two or more allied offenses of similar import. It does not prohibit the indictment from containing counts for all such offenses, or trial on those allied offenses. Accordingly, with respect to Walker's claim in these assignments of error that the trial court should have granted his pretrial motion to dismiss various counts and specifications because they suffer from multiplicity, the trial court correctly ruled that Walker's request was premature until such time as he was convicted of two or more allied offenses. The trial court properly addressed this issue as a merger question after Walker's conviction but before his sentencing.
 Merger of Offenses In State v. Ginyard (October 8, 1999), Miami App. No. 17344, unreported, this court discussed the test to be used in determining whether R.C. 2941.25 requires the merger of two or more offenses which arise out of the same conduct by the accused:
 The test for determining whether merger is appropriate requires engagement in a two-step analysis. State v. Jones (1997), 78 Ohio St.3d 12, 13, 676 N.E.2d 80, citing State v. Blankenship (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. In State v. Mughni (1987), 33 Ohio St.3d 65, 67, 514 N.E.2d 870, the Ohio Supreme Court articulated the analytical framework for such inquiries as follows:
 The first step requires a comparison of the elements with which the defendant is charged, for the purpose of discovering whether the elements of both offenses correspond to such a degree that the commission of one offense will result in commission of the other. If so, they are allied offenses of similar import. If the court so finds, it must proceed to the second step, which involves a review of the defendant's conduct to determine whether the offenses were committed separately or with a separate animus as to each. If so, the defendant may be convicted of both. * * * The defendant bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act.
 Walker argues that the trial court should have merged count one, domestic violence, and count two, felonious assault, because both offenses arise out of the same incident and involve the same victim. As a result of beating up his former girlfriend, Jeronda Johnson, on April 23, 1998, Walker was found guilty of violating R.C. 2919.25(A) which prohibits knowingly causing or attempting to cause physical harm to a family or household member. Walker was also convicted of violating R.C. 2903.11(A)(1) which prohibits knowingly causing serious physical harm to another person.
Comparing the elements of these two offenses it is obvious that the commission of one offense does not necessarily result in commission of the other offense. Domestic violence requires that the victim be a family or household member. Felonious assault has no such requirement. Conversely, felonious assault requires that the harm caused be serious physical harm. Domestic violence on the other hand only requires physical harm. Accordingly, each offense can be committed without necessarily committing the other offense. They are not, therefore, allied offenses of similar import, and we need not proceed to the second step in the analysis and determine if these offenses were committed separately or with a separate animus as to each. Blankenship, supra; Mughni, supra. The trial court correctly refused to merge these offenses.
Next, Walker asserts that the trial court should have merged count five, felonious assault, and count six, aggravated robbery. As a result of attempting to steal Robert Larsen's car at gunpoint and then shooting Larsen when he fled, Walker was convicted of violating R.C. 2903.11(A)(2) which prohibits knowingly causing or attempting to cause physical harm to another person by means of a deadly weapon. Walker was also convicted of violating R.C.2911.01(A)(1) which states that no person in attempting or committing a theft offense, shall have a deadly weapon on or about the offender's person and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
Comparing the elements of these two offenses it is obvious that commission of one offense does not necessarily result in commission of the other offense. Felonious assault requires that the offender cause or attempt to cause physical harm. Aggravated robbery does not require that. Aggravated robbery does require that the offender commit or attempt to commit a theft offense. Felonious assault has no such requirement. These two offenses are not allied offenses of similar import and the trial court acted properly in refusing to merge them.
Walker also argues that the trial court should have merged count fourteen, felonious assault, and count fifteen, aggravated vehicular assault, because both offenses involve the same victim and arise out the same incident, the traffic accident that Walker caused resulting in serious injuries to Thomas Sibilsky. Walker was not convicted, however, of count fourteen and hence this argument is moot.
Walker further claims that the trial court should have merged counts six and seven, both of which charged Walker with aggravated robbery in violation of R.C. 2911.01(A)(1). Count six arises out of Walker's unsuccessful attempt to steal Robert Larsen's car at gunpoint. Count seven arises out of Walker's conduct in successfully stealing Velma McCall's car at gunpoint.
These two counts charge the identical same offense, a violation of R.C. 2911.01(A)(1), and hence they are allied offenses of similar import pursuant to R.C. 2941.25(A). Proceeding to the next step of the analysis, however, we conclude that these offenses were committed separately, with a separate animus as to each. These offenses involve different victims. After Walker was unsuccessful in his attempt to steal Robert Larsen's car at gunpoint, Walker shot Larsen as he fled from Walker in his vehicle. Shortly thereafter Walker encountered Velma McCall and he successfully stole her vehicle at gunpoint. On these facts it is clear that these offenses were committed separately with a separate animus as to each, and thus the trial court acted properly in not merging these offenses. R.C.2941.25(B); Committee Comment to R.C. 2941.25.
Walker further claims that the trial court should have merged counts ten and eleven, both of which charge Walker with improperly discharging a firearm at or into a habitation. These offenses arise out of Walker's conduct in firing several shots into the residence located at 2137 Kipling Drive, Dayton, Ohio.
These two counts charge the identical same offense, a violation of R.C. 2923.161(A). Hence, they are allied offenses of similar import. R.C. 2941.25(A). However, these offenses were committed separately. After Walker was unsuccessful in his attempt to force his way inside this residence via the front door, he walked out into the front yard and fired four shots through the living room window. This conduct gives rise to the charge in count ten. Walker then returned to the stolen vehicle he was driving, reloading his shotgun as he walked back to the car. When he arrived at the car, Walker swung the gun up over the roof of that car and fired one shot into the residence. Walker then got back inside the vehicle and fired one final shot at that residence through the open passenger window. This is the conduct that gives rise to count eleven. See, R.C. 2929.14. On these particular facts we conclude that these offenses were committed separately and hence the trial court did not commit error in failing to merge them. R.C. 2941.25(B).
Finally, with respect to Walker's claim that all of the counts should have been merged, we have already discussed counts one, two, five, six, seven, ten, eleven, fourteen and fifteen. With respect to the remaining counts: three charges Walker with felonious assault on a Dayton police officer, Sitesa Van Nuys, R.C. 2903.11(A)(2); four charges Walker with felonious assault on Dayton police officer Stephen Bice, R.C. 2903.11(A)(2); nine charges Walker with the attempted aggravated burglary of the residence located at 2137 Kipling Drive, R.C.2923.02/2911.11(A)(2); twelve charges Walker with failure to comply with the signal of a police officer while fleeing down I-75, R.C. 2921.331(B); and thirteen charges Walker with having weapons while under disability based upon his possession of a shotgun while fleeing from police down I-75, R.C. 2923.13(A)(1).
These offenses either do not constitute allied offenses of similar import under the first step of the two step test set forth in Mughni, supra, or if they do, as in the case of counts threeand four, the offenses were committed against different victimsand hence with a separate animus as to each, or the offenses werecommitted separately in time and place. R.C. 2941.25(B).Therefore, the trial court did not commit error in failing tomerge these offenses.
 Merger of Firearm Specifications
Count eleven charged Walker with discharging a firearm at or into a habitation in violation of R.C. 2923.161(A). The conduct giving rise to this offense was Walker's actions in firing a shot at the Kipling Drive residence from inside his vehicle via the open passenger window. There were two separate firearm specifications attached to this charge: a three year specification pursuant to R.C. 2941.145, and a five year specification pursuant to R.C. 2941.146. Walker argues that since these specifications arise out of the same incident and involve the same conduct, the trial court committed error in failing to merge these two firearm specifications. We disagree.
The imposition of multiple punishments for the same conduct does not violate the Double Jeopardy clause in those situations where the General Assembly has clearly manifested its intention to authorize such cumulative punishments. Ohio v. Johnson, supra. In those cases appellate review is limited to ensuring that the trial court did not exceed the sentencing authority which the General Assembly authorized. State v. Moss (1982), 69 Ohio St.2d 515.
For a violation of R.C. 2923.161(A), the Ohio General Assembly has clearly authorized the imposition of cumulative punishments via R.C. 2941.145 and R.C. 2941.146. R.C. 2929.14
provides in relevant part:
 (D)(1)(a) Except as provided in division (D)(1)(d) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms:
* * *
 (ii) A prison term of three years if the specification is of the type described in section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense and displaying the firearm, brandishing the firearm, indicating that the offender possessed the firearm, or using it to facilitate the offense.
* * *
 (c) Except as provided in division (D)(1)(d) of this section, if an offender who is convicted of or pleads guilty to a violation of section 2923.161 of the Revised Code or to a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another, also is convicted of or pleads guilty to a specification of the type described in section 2941.146 of the Revised Code that charges the offender with committing the offense by discharging a firearm from a motor vehicle other than a manufactured home, the court, after imposing a prison term on the offender for the violation of section 2923.161 of the Revised Code or for the other felony offense under division (A), (D)(2), or (D)(3) of this section, shall impose an additional prison term of five years upon the offender that shall not be reduced pursuant to section 2929.20, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code. A court shall not impose more than one additional prison term on an offender under division (D)(1)(c) of this section for felonies committed as part of the same act or transaction. If a court imposes an additional prison term on an offender under division (D)(1)(c) of this section relative to an offense, the court also shall impose a prison term under division (D)(1)(a) of this section relative to the same offense, provided the criteria specified in that division for imposing an additional prison term are satisfied relative to the offender and the offense.
 Having found Walker guilty of a violation of R.C. 2923.161, the trial court imposed both a three year mandatory prison term pursuant to the firearm specification in R.C. 2941.145, and a five year mandatory prison term pursuant to the firearm specification in R.C. 2941.146. Per R.C. 2929.14, the Ohio legislature has clearly authorized the imposition of such cumulative punishments and thus the trial court did not commit error in failing to merge these two firearm specifications to count eleven.
Moreover, we reject Walker's claim that his sentence on count eleven constitutes cruel and unusual punishment under theEighth Amendment. Walker's sentence is not grossly disproportionate to the severity of the offense. State v. Bonello (1981), 3 Ohio App.3d 365. The use of firearms during the commission of a crime is a serious threat to public safety which the General Assembly has a legitimate interest in preventing. Under Ohio's scheme the penalty for using a firearm increases as the conduct becomes more serious. Merely possessing on one's person a firearm while committing an offense warrants an additional mandatory one year sentence. R.C. 2941.141. Displaying or using a firearm during an offense warrants an additional mandatory three year prison term, R.C. 2941.145, whereas discharging a firearm from a motor vehicle at or into a habitation, or in such a manner as to purposely or knowingly cause or attempt to cause death or physical harm to another (drive by shootings), warrants an additional mandatory five year prison term. R.C. 2941.146. Walker's sentence is not grossly disproportionate to his conduct at the Kipling Drive residence.
Finally, Walker's additional sentence pursuant to R.C.2941.146 does not violate his rights to equal protection because while R.C. 2941.145 and R.C. 2941.146 impose different penalties, they also prohibit different activity and require different proof. The trial court did not commit error in failing to merge or dismiss the second specification to count eleven.
Walker also argues that all of the firearm specifications should merge because they all arise out of one continuing "course of criminal conduct" which occurred on April 25, 1998.
Pursuant to R.C. 2929.14(D)(1)(b), a court shall not impose a prison term for more than one firearm specification on an offender for felonies committed as part of the "same act or transaction." Same act or transaction does not have the same meaning as course of criminal conduct. State v. Keene (September 20, 1996),Montgomery App. No. 14375, unreported. "Same act or transaction"for purposes of R.C. 2929.14(D)(1)(b) means a series of continuousacts bound together by time, space and purpose, and directedtoward a single objective. State v. Wills (1994), 69 Ohio St.3d 690.This is a broader concept than the separate animus testassociated with R.C 2941.25. State v. White (1991), 71 Ohio App.3d 550.
In this case the trial court merged the firearm specifications to counts five and six into just one specification. Those offenses involved Walker's attempt to steal Robert Larsen's car at gunpoint and his shooting of Larsen during that process. The trial court also merged the three year firearm specifications to counts nine, ten and eleven into just one specification. These offenses all arise out of Walker's conduct at the Kipling Drive residence including his unsuccessful attempt to force his way into that residence, and then his actions in firing several shots at or into that residence.
The trial court refused to merge the firearm specifications to counts three and four. These offenses, two counts of felonious assault, arise out of Walker's conduct in shooting at the two Dayton police officers who came to his residence on April 25, 1998, to arrest him pursuant to a warrant. Count three relates to Officer Van Nuys and count four relates to Officer Bice. These offenses occurred at the same time, at the same place, during a single confrontation between Walker and these officers, and were directed toward a single purpose or objective, i.e, to repel the officers in order to escape apprehension. Accordingly, we conclude that these two offenses were part of the "same act or transaction," and thus the trial court erred in not merging the firearm specification for each offense into just one single specification. State v. Williams (1996), 115 Ohio App.3d 24.
The trial court also refused to merge the firearm specification to count seven, which involved Walker's conduct in stealing Velma McCall's car at gunpoint, with the firearm specification to count six, which involved Walker's attempt to steal Robert Larsen's car at gunpoint. While count seven occurred very shortly after Walker unsuccessfully attempted to steal Robert Larsen's car at gunpoint as charged in count six, it nevertheless occurred at a different time. Moreover, although this offense occurred in the exact same place as count six, the alley behind Ray's Pharmacy on Catalpa Drive where it intersects with Rugby Road, this offense was motivated by a different purpose or objective than the offense in count six, i.e. to obtain Velma McCall's vehicle versus obtain Robert Larsen's vehicle. Thus, we conclude that count seven was not part of the same act or transaction as the offense charged in count six, and therefore the trial court correctly refused to merge the firearm specifications to counts six and seven into just one specification (the trial court having already merged the specifications on counts five and six). State v. Wills, supra.
Finally, the trial court refused to merge the firearm specifications to counts twelve and fifteen. Count twelve implicated Walker's conduct in having a firearm in his possession as he fled from police who were pursuing him down I-75 toward Cincinnati. Count fifteen involved Walker's conduct in possessing that same firearm at the time he caused the traffic accident with Thomas Sibilsky's car at the intersection of Central Parkway and Sycamore Street in downtown Cincinnati while fleeing from police, which accident resulted in serious physical harm to Sibilsky. These offenses clearly occurred at different times and in different places. The offense charged in count twelve was completed before the conduct giving rise to count fifteen occurred. The mere fact that they share a common objective, escape from the police, is not sufficient to classify them as part of the same act or transaction. Thus, the trial court properly refused to merge the firearm specifications to counts twelve and fifteen.
These assignments of error are sustained in part and overruled in part.
 SIXTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN FAILING TO DISMISS COUNTS 12 THROUGH 15.
Walker argues that the trial court committed error in overruling his motion to dismiss counts twelve through fifteen based upon improper venue. According to Walker these offenses occurred in Hamilton County, Ohio, and they have no relationship to the offenses set forth in counts one through eleven which occurred in Montgomery County, Ohio. We disagree with Walker's assertions.
R.C. 2901.12 which governs venue provides in part:
 (A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.
* * *
 (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
* * *
 (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
* * *
 (6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.
 As a general rule, venue lies in the territory in which an offense or any element thereof is committed. R.C. 2901.12(A). However, when an offender as part of a course of criminal conduct commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of the offenses or any element of one or the offenses was committed. R.C. 2901.12(H).
As we previously discussed in overruling Walker's second and ninth assignments of error, all of the offenses in this case, counts one through fifteen, are intertwined and part of a course of criminal conduct. Each offense prompted the next, forming a chain of events. R.C. 2901.12(H)(3). Moreover, counts twelve through fifteen occurred along Walker's line of travel in this state while he fled from police in order to escape apprehension for the offenses charged in counts one through eleven. R.C.2901.12(H)(6). Accordingly, pursuant to R.C. 2901.12(H) venue for all of these offenses, including counts twelve through fifteen, was proper in Montgomery County, Ohio, where counts one through eleven occurred.
The sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED AS TO THE INTENT REQUIREMENTS OF OHIO LAW.
In this assignment of error Walker asserts that an "attempt" to commit an offense always requires that the offender act with the culpable mental state of "purposely," i.e, with specific intent. In this case counts one, three, four, five, six, seven, eight, nine, eleven (firearm specification number two), and fourteen all involve attempt as an element of the offense. Thus, Walker argues that the trial court erred in failing to instruct the jury on the culpable mental state of purposely, R.C.2901.22(A), as it relates to each of these offenses.
At the outset we note that Walker concedes that he failed to object to the trial court's jury instructions. Therefore, any error in that regard has been waived and we review this claim of error utilizing a "plain error" standard. Crim.R. 30(A); State v.Greer (1988), 39 Ohio St.3d 236. Plain error does not existunless it can be said that but for the error the outcome of thetrial clearly would have been different. State v. Long (1978),53 Ohio St.2d 91.
Count one charged Walker with domestic violence in violation of R.C. 2919.25(A):
 (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 Counts three, four, five, eight and fourteen charged Walker with felonious assault in violation of R.C. 2903.11(A)(2):
 (A) No person shall knowingly do either of the following:
* * *
 Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
 Counts six and seven charged Walker with aggravated robbery in violation of R.C. 2911.01(A)(1):
 No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
For purposes of this statute theft offense is defined in R.C. 2913.02:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation.
In count nine Walker was charged with attempted aggravated burglary in violation of R.C. 2923.02(A) and R.C. 2911.11(A)(2):
 No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
 No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
* * *
 The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
The second firearm specification to count eleven, R.C.2941.146 and R.C. 2929.14(D)(1)(e), authorizes an additional mandatory five year prison term for a violation of R.C.2923.161(A)(1), which provides:
 No person, without privilege to do so, shall knowingly do either of the following:
 Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual.
The culpable mental states of purposely and knowingly are defined respectively in R.C. 2901.22(A)and (B):
 (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
It is readily apparent from an examination of R.C.2923.02(A) which defines attempt, that an attempt to commit an offense can be committed either purposely or knowingly, depending upon the culpable mental state required to commit that particular offense. This premise is reinforced by the Committee Comment to R.C. 2923.02:
 Under the section, an attempt must be purposely or knowingly committed. If the offense attempted specifies that purpose is the culpable mental state required for its commission, then the attempt must be purposeful. Purposely or knowingly attempting to commit a crime is sufficient to make the attempt an offense if the crime attempted requires knowledge, recklessness, or negligence for its commission.
Clearly, an offender need not act purposely in attempting to commit an offense which requires the culpable mental state of knowingly for its commission. To the extent that the offenses about which Walker now complains require the culpable mental state of knowingly for their commission, the trial court did not commit error, much less plain error, in failing to instruct the jury that in attempting to commit those offenses Walker was required to act purposely, with specific intent.
The seventh assignment of error is overruled.
 EIGHTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT ALLOWING EVIDENCE OF INTOXICATION TO NEGATE THE REQUISITE PURPOSEFUL INTENT.
 NINTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT ALLOWING DR. SEEGLE TO TESTIFY.
In these two related assignments of error Walker argues that the trial court abused its discretion in not allowing his expert witness to testify that as a result of voluntary intoxication caused by ingesting alcohol and/or drugs, Walker was unable to form the specific mental state required for commission of these offenses.
The general rule in Ohio is that voluntary intoxication is not a defense to any crime. However, there is an exception. Where specific intent is a necessary element of the offense charged, if the intoxication is such as to preclude the formation of that intent, then the fact of intoxication may be shown to negate this element. State v. Fox (1981), 68 Ohio St.2d 53; Statev. Wolons (1989), 44 Ohio St.3d 64; State v. Alexander (Dec. 5, 1997), Montgomery App. No. 16315, unreported.
An abuse of discretion standard applies on appellate review of a trial court's decision admitting or excluding evidence, and concerning the sufficiency of the evidence of intoxication where a defendant claims that his intoxicated condition precluded formation of the culpable mental state required for commission of the offense. An abuse of discretion connotes more than an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151.
First, as we noted in overruling Walker's seventh assignment of error, the crimes charged in this case are not specific intent crimes requiring Walker to act purposely. In discussions with the trial court Walker conceded that nearly all of the charged offenses require the culpable mental state of "knowingly." Even assuming arguendo however that it is proper to introduce evidence of voluntary intoxication to rebut formation of the culpable mental state of knowingly, testimony by Walker's expert witness, Dr. Seegle, was not admissible for that purpose.
According to the proffer made by Walker, Dr. Seegle would testify to the existence, origin, and effect of a condition, psychological blackouts resulting in an inability to recall, which some people including Walker suffer as a result of chronic substance abuse problems. Dr. Seegle would not testify, however, to Walker's state of mind at the time of these offenses, or that Walker's ingestion of drugs and/or alcohol on April 25, 1998, resulted in a blackout and his inability to recall. Under these facts and circumstances such a failure of memory, if it in fact happened, is nevertheless not evidence that at the time these offenses were committed Walker lacked the intent to commit them.Alexander, supra.
More importantly, in State v. Mitts (1998), 81 Ohio St.3d 223,227, the Ohio Supreme Court stated:
 . . . "[A] defendant may not offer expert psychiatric testimony, unrelated to the insanity defense, to show that, due to mental illness, intoxication, or any other reason, he lacked the mental capacity to form the specific mental state required for a particular crime or degree of crime." State v. Cooey (1989), 46 Ohio St.3d 20, 26, 544 N.E.2d 895, 906; accord State v. Wilcox (1982), 70 Ohio St.2d 182, 194, 24 O.O.3d 284, 291, 436 N.E.2d 523, 530; State v. Slagle (1992), 65 Ohio St.3d 597, 607, 605 N.E.2d 916, 927; State v. Huertas (1990), 51 Ohio St.3d 22, 27, 553 N.E.2d 1058, 1065 (rejecting expert witnesses as to the effect of intoxication).
 Jurors are capable of determining, without expert assistance, whether an accused was too intoxicated to specifically intend to commit the acts which he committed. State v. Cooey
(1989), 46 Ohio St.3d 20, 26. Dr. Seegle's testimony was not admissible to demonstrate that Walker's intoxicated state prevented him from forming the mental state required for these offenses.
Finally, the evidence of intoxication which was presented was not sufficient to negate formation of the culpable mental state required for these offenses, or even raise that defense. The defense presented no evidence at trial. The testimony by the police officers who arrested and subsequently interviewed Walker provides no evidence of intoxication. Walker himself told police that he only had one beer and was not under the influence of alcohol or high on drugs at the time of these offenses.
On the record before us the trial court did not commit error, much less abuse its discretion, in refusing to allow Dr. Seegle to testify.
The eighth and eleventh assignments of error are overruled.
 Conclusion
Having sustained Walker's twelfth assignment of error in part, the case will be remanded to the trial court for the purpose of merging the firearm specifications attached to counts three and four and for resentencing accordingly, but as so modified, and in all other respects, the judgment of the Common Pleas Court will be affirmed.
 __________________________ KERNS, J.
GRADY, P.J. and WOLFF, J., concur.
Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.